UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRIN LaPINE,

        Plaintiff,

v.                                                                                                        Case Number 19-13165
                                                                                                        Honorable David M. Lawson

CITY OF DETROIT, COUNTY OF WAYNE,
WAYNE COUNTY PROSECUTOR'S OFFICE,
DR. HUQ, DR. MYLES, DR. PATSALIS,
RN DURAM, RN LONG, RN GRAHAM,
DEPT. D. JONES, DEPT. DEGASRIAPO,
CORP. DYER, CORP. DICKSEN, CORP. BORDEAU,
DEREK EMME, MICHAEL MILESKI,
MICHAEL NELSON, and JANE and JOHN DOES,

        Defendants.

_____/

**MEMORANDUM ORDER GRANTING PLAINTIFF'S APPLICATION TO PROCEED WITHOUT PREPAYING FEES AND COSTS, DIRECTING INITIAL PARTIAL FILING FEE PAYMENT AND SUBSEQUENT PAYMENTS, DISMISSING PLAINTIFF'S CLAIMS UNDER 42 U.S.C. §§ 1981, 1985, AND 1986, DISMISSING PLAINTIFF'S CLAIMS CHALLENGING HIS ASSAULT CONVICTION AND PRISON DISCIPLINARY PROCEEDING, AND DIRECTING PLAINTIFF TO PROVIDE ADDRESSES FOR THE TWELVE DEFENDANTS THAT REMAIN IN THE CASE**

      Plaintiff Darrin LaPine, a state prisoner at the Macomb Correctional Facility in Lenox Township, Michigan, recently filed a *pro se* civil rights complaint and an application to proceed without prepaying the fees or costs for this action. He alleges that the defendants have violated state law and his federal constitutional rights by prosecuting him for an assault on another inmate and by denying him medical care. Because his challenges to the fairness of the prison disciplinary proceeding and criminal prosecution are not properly asserted in a civil rights action, those claims must be dismissed. And because LaPine has not alleged facts that support recovery under any legal theory contemplated by 42 U.S.C. §§ 1981, 1985 or 1986, those claims will be dismissed as well. LaPine may proceed with his medical claims under 42 U.S.C. § 1983, but he must follow

the procedures outlined in this order, which includes furnishing addresses for the defendants who remain in this case.

I.

LaPine alleges in his complaint that on May 24, 2015, while he was on parole at the Detroit Reentry Center, a fellow inmate named Michael Mileski accused him of biting Mileski's cheek and attempting to scratch Mileski's face. Later, Mileski changed his claim and maintained that LaPine had inserted his fingers in Mileski's eyes and tried to gouge them out. Defendant Michael Nelson filed a critical incident report about the alleged assault, but LaPine was not provided with any discovery materials, and the hearing investigator refused to investigate the matter. LaPine was found guilty of the disciplinary charge even though no one questioned the witnesses or provided any physical evidence to support the charge. The disciplinary case was then referred to the Michigan State Police for possible criminal charges. LaPine claims that he was arrested without probable cause and has been falsely imprisoned since then. Compl., ¶ 1, PageID. 3-6.

Defendant Derek Emme of the Michigan State Police requested a warrant, and around September 14, 2016, the Wayne County Prosecutor's Office authorized a warrant. LaPine was charged with one count of assault with intent to maim or disfigure Mileski. On October 18, 2016, a video arraignment was conducted, and at a preliminary examination on November 30, 2016, the presiding judge concluded that there was probable cause to charge LaPine with a felony. LaPine, however, contends that there was no probable cause to charge him, his arrest was illegal, and his imprisonment is illegal. Compl., ¶¶1-2, PageID 6-7.

Continuing, LaPine alleges that, on February 21, 2017 or thereabout, while he was being held in the Wayne County Jail, he was handcuffed to another prisoner and told to climb the stairs instead of taking the elevator in the tunnel that leads between the jail and the county courts.

Defendant Dyer stood by and allowed this to happen, despite knowing that LaPine could not climb stairs. The other inmate lost control of his legal materials, and both he and LaPine fell to the tunnel floor below. LaPine suffered cuts, abrasions, lumps, bruises, and pain from the fall, but he did not receive any treatment for his injuries. He complained to defendant D. Jones who did nothing, and defendant Dicksen threatened to beat him if he complained about being injured and needing medical care. LaPine claims that he would not have fallen or been injured if it had not been for the order to climb the stairs. Compl., ¶ 5, PageID. 7-9.

On February 22, 2017, defendants Degasriapo and D. Jones took LaPine to the medical unit in a wheelchair, but the deputies, nurses, and Dr. Huq laughed at him, and he was not treated for his injuries. Dr. Huq made him walk, but he fell again and re-injured himself. He was finally given a stroller with a seat, and defendant Bordeau escorted him back to his cell, where he had to give up his stroller. Compl., ¶ 5, PageID. 9-10.

On February 24, 2017, defendant Degasriapo informed LaPine that he would have to walk about half a mile to the medical unit to get medical treatment and x-rays. LaPine never received any medical treatment because he could not walk to the medical unit. Compl., ¶6, PageID. 10.

On February 27, 2017, LaPine's criminal case on the assault charge was dismissed due to pre-arrest delay. The prosecutor, however, appealed the trial judge's decision, and on November 15, 2018, the Michigan Court of Appeals remanded the case because no intentional delay or prejudice had been shown. The Michigan Supreme Court declined to grant leave to appeal. LaPine, however, maintains that the Wayne County Prosecutor's Office misrepresented to the state circuit court that there were no videos, no intentional delay, and no known witnesses. He also alleges in conclusory fashion that the criminal case was the result of a conspiracy and that it was a retaliatory act done in violation of his right to due process. Compl., ¶ 7, PageID. 10-11.

In 2019, LaPine's parole was suspended, reinstated, and suspended again, apparently as a result of the criminal case against him. Additionally, the state trial court refused to hear LaPine's motions to dismiss the criminal case even though the motions alleged that the defendants had engaged in corrupt conduct. Compl., ¶¶ 8-9, PageID. 11.

LaPine concludes his complaint by alleging that he was scheduled for spinal surgery on October 2, 2019, and that he was assured by defendants Duram, Graham, and Long that the scheduled surgery had been coordinated with Henry Ford Hospital. Dr. Patsalis and Dr. Myles also assured LaPine that he was having surgery on October 2, 2019. According to LaPine, the surgery was not performed, and there is a reasonable likelihood that he will be paralyzed as a result of the failure to receive the surgery. Compl. ¶ 9, PageID. 11-12.

LaPine does not say what relief he wants, but he contends that the defendants intentionally delayed his arrest to their advantage, maliciously prosecuted him, and deprived him of medical treatment and surgery. These acts and omissions, he claims, violated his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments. Compl. ¶ 9, PageID. 12-13.

II.

When, as here, a plaintiff has asked the Court to waive fees and costs because he cannot afford to pay them, the Court has an obligation to screen the case for merit and dismiss the case if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

Three or more of LaPine's previous civil cases were dismissed as frivolous or for failure to state a claim. *See LaPine v. Romanowski*, No. 15-cv-11362, ECF No. 6, PageID. 42-43 (E.D. Mich. May 15, 2015) (collecting cases). Therefore, he is subject to the "three strikes" rule, which

means that he is not entitled to proceed without prepayment of the fees and costs for this action unless he "is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). As contemplated by that statute, "[a] physical injury is 'serious' . . . if it has potentially dangerous consequences such as death or severe bodily harm." *Gresham v. Meden,* 938 F.3d 847, 850 (6th Cir. 2019).

LaPine has satisfied that exception here. He alleges that he has impingement on nerve roots, severe spinal stenosis, degenerative disk disease, acute sciatica, herniated and bulging disks, severe arthritis, and severe neuropathy. According to him, the surgery that was scheduled to alleviate these problems has been postponed and, therefore, he is at risk of irreparable harm and he is in imminent danger of a life-threatening injury. Compl., ECF No. 1, PageID. 2-3. These are sufficient allegations of "imminent danger" to trigger the exception in § 1915(g).

LaPine will be permitted to proceed without *prepaying* the fees or costs for this action, but he eventually must pay the full filing fee for this action. 28 U.S.C. § 1915(b)(1). The Court must assess and, if funds exist, collect an initial partial filing fee consisting of 20% of the greater of (1) the average monthly deposits to LaPine's prison trust fund account or (2) the average monthly balance in LaPine's account for the preceding six months. *Ibid.* After LaPine pays the initial partial filing fee, he must make monthly payments of twenty percent of the preceding month's income credited to his account. 28 U.S.C. § 1915(b)(2).

There is another, overlapping level of screening mandated by the Prison Litigation Reform Act (PLRA), which requires the Court to screen for colorable merit every prisoner complaint filed against a state or governmental entity, and dismiss them if they are frivolous or seek relief against a defendant that is immune. 28 U.S.C. § 1915A(a) ("The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in

which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.")

A complaint is frivolous if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Denton v. Hernandez*, 504 U.S. 25, 31-32 (1992). "A complaint lacks an arguable basis in law or fact if it . . . is based on legal theories that are indisputably meritless." *Brown v. Bargery*, 207 F.3d 863, 866 (6th Cir. 2000) (citing *Neitzke*, 490 U.S. at 327–28). Dismissal on the Court's initiative is appropriate if the complaint lacks an arguable basis when filed. *Goodell v. Anthony*, 157 F. Supp. 2d 796, 799 (E.D. Mich. 2001).

Although a *pro se* litigant's complaint must be construed liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), "[t]he leniency granted to pro se [litigants] . . . is not boundless." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). The screening mandated by Congress in section 1915(e)(2) includes the obligation to dismiss civil complaints filed by prospective *pro se* filers if they "fail[] to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock,* 549 U.S. 199 (2007).

To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

LaPine brings his lawsuit under 42 U.S.C. §§ 1981, 1983, 1985, and 1986. His pleaded facts, however, do not fit three of the four sections on which he relies.

A.

Section 1981 "has a specific function: It protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006). "Any claim brought under § 1981, therefore, must initially identify an impaired 'contractual relationship,' § 1981(b), under which the plaintiff has rights." *Id*. at 476.

LaPine has not identified any contract that he sought to make with, or enforce against, any of the defendants. Although he alleges that he was scheduled to have surgery on certain dates, the medical appointment did not establish a contractual relationship. Therefore, LaPine has not stated a claim under section 1981.

B.

Section 1985, which prohibits certain conspiracies to violate civil rights, does not fit the pleaded facts either. The only conceivable subparagraph that could apply is the third one, which prohibits conspiracies to "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 43 U.S.C. § 1985(3). But as the court of appeals has explained:

> To demonstrate a private conspiracy under § 1985(3) the plaintiff must prove (1) a conspiracy involving two or more persons, (2) for the purpose of depriving, directly or indirectly, a person or class of persons the equal protection of the laws and (3) an act in furtherance of that conspiracy (4) that causes injury to person or property, or a deprivation of a right or privilege of a United States citizen. *Johnson v. Hills & Dales Gen. Hosp.,* 40 F.3d 837, 839 (6th Cir. 1994). The plaintiff must also show the conspiracy was motivated by racial, or other class[-]based animus.

*Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996) (citing *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263 (1993)).

LaPine has not asserted membership in a protected group, nor demonstrated that the defendants acted in concert to deprive him of equal protection of the law. His conclusory

allegations of conspiracy and retaliation, unsupported by material facts, do not state a plausible claim for relief. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Spadafore v. Garnder*, 330 F.3d 849, 854 (6th Cir. 2003).

C.

LaPine also has not stated a claim under section 1986, which makes actionable the failure or refusal by a person "having power to prevent or aid in preventing the commission of" the conspiracies prohibited by section 1985. 42 U.S.C. § 1986. That is because his "failure to state a claim for relief under § 1985 is fatal to his claims brought pursuant to § 1986 because a § 1986 claim is dependent upon a viable § 1985 claim." *Amadasu v. The Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008).

D.

LaPine also seeks redress under 42 U.S.C. § 1983. To state a claim under that section, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).

1.

LaPine's challenges to the criminal prosecution for assault with intent to maim and the subsequent revocation of parole fail to state a plausible civil rights claim for relief under section 1983 because "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." *Heck v. Humphrey*, 512 U.S. 477, 481 (1994) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 488-90 (1973)). In *Heck*, the Supreme Court held that a plaintiff seeking relief under section 1983 cannot proceed when allowing him to do so would

call into question the propriety of a prior criminal conviction that had not been set aside or expunged by judicial or executive action. *Trevino v. Kelly*, 245 F. Supp. 3d 935, 941 (E.D. Mich. 2017). The Supreme Court held that, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 86-87.

LaPine's complaints about the criminal prosecution for assault with intent to maim and the subsequent revocation of parole call into question the propriety of his criminal conviction. Those allegations necessarily challenge the fact or duration of confinement, and because the conviction ultimately was affirmed on appeal, LaPine's cannot proceed on those claims under 42 U.S.C. § 1983.

The same reasoning applies to LaPine's challenge to the procedures used during the prison disciplinary proceedings, because the Supreme Court

> extended its holding [in *Heck*] to suits that challenge the procedures used in prison-disciplinary proceedings when the results of those proceedings impact the duration of a prisoner's sentence. *Edwards v. Balisok,* 520 U.S. 641, 646, 648, (1997). The [Supreme] Court has since explained the rule as follows: "a state prisoner's § 1983 action is barred (absent prior invalidation [of his conviction] )—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson,* 544 U.S. 74, 81–82, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005) (emphasis in original).

*LaFountain v. Harry*, 716 F.3d 944, 950 (6th Cir. 2013).

LaPine asserts that the prison disciplinary charge led to the criminal charge, which resulted in a conviction and the revocation of parole. The duration of LaPine's confinement was directly

affected by the conviction and the revocation of parole. Therefore, his challenge to the misconduct proceeding is barred under *Edwards* and *Heck*, and he has failed to state a claim against the defendants who were involved in the prison disciplinary proceeding and the criminal prosecution.

That also means that the Wayne County Prosecutor's Office, Derek Emme, Michael Mileski, and Michael Nelson must be dismissed as defendants in this case. Mileski must be dismissed for an additional reason: As a witness in LaPine's prison disciplinary proceeding and criminal prosecution, he enjoys immunity from suit. *Briscoe v. Lahue*, 460 U.S. 325, 335-36, 346-46 (1983); *Gibson v.* Roush, 587 F. Supp. 504, 506 (W.D. Mich. 1984).

2.

LaPine seeks to hold the City of Detroit liable, but his only allegations about the City are that the defendants are employed by the City, the Wayne County Jail lies within the City, and the City had a duty not to falsely arrest or prosecute him or deprive him of medical treatment and surgery. Compl., PageID. 2, 8, 12. LaPine has not identified any defendants who were actually employed by the city, and even if he had, the City cannot be held liable on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978); *Gardner v. Evans*, 920 F.3d 1038, 1056, 1063 (6th Cir. 2019).

Furthermore, although local governing bodies "can be sued directly under § 1983," they can be held liable only when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id*. at 690. To prevail on his claim against the City of Detroit, LaPine "must show (1) that [he] suffered a constitutional violation and (2) that a municipal policy or custom directly caused the violation." *Hardrick v. City of Detroit, Michigan*, 876 F.3d 238, 243 (6th Cir. 2017) (citing *Monell*, 436 U.S. at 690–92); *see also Gardner*, 920 F.3d at 1063 (stating

that "one route for holding municipalities liable . . . is showing that the harms at issue were caused by the implementation of municipal policies or customs'") (citation omitted). LaPine has not identified a municipal policy or custom that caused his injuries., and therefore the City of Detroit must be dismissed from this lawsuit.

3.

LaPine's remaining claims concern medical issues. The court of appeals explained in *Rhinehart v. Scutt*, 894 F.3d 721 (6th Cir. 2018), that

> [t]he government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle [v. Gamble*, 429 U.S. 97, 103 (1976)]. But mere failure to provide adequate medical care to a prisoner will not violate the Eighth Amendment. In those circumstances, a constitutional violation arises only when the doctor exhibits "*deliberate indifference* to a prisoner's serious illness or injury," *id.* at 105 (emphasis added), that can be characterized as "obduracy and wantonness" rather than "inadvertence or error in good faith," *Wilson v. Seiter*, 501 U.S. 294, 299 (1991)] (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). To establish a prison official's deliberate indifference to a serious medical need, an inmate must show two components, one objective and the other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The plaintiff must show both that the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and that the official acted with a culpable enough state of mind, rising above gross negligence. *Id.* at 834-35.

*Id*. at 737. Nevertheless,

> [w]hen prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, their conduct in causing the delay creates the constitutional infirmity. In such cases, the effect of the delay goes to the extent of the injury, not the existence of a serious medical condition.

*Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004).

LaPine alleges that in 2017, he was required to walk and climb steps even though he was not capable of those functions, and he was denied medical treatment when he fell and injured himself. He also alleges that in 2019 he was denied necessary surgery while housed at the Wayne County Jail because the defendants failed to transport him to the hospital for surgery. These

-11-

allegations arguably state a plausible claim against Wayne County and the following individual defendants: Dr. Huq, Dr. Myles, Dr. Patsalis, RN Duram, RN Long, RN Graham, D. Jones, Dept. Degasriapo, Corp. Dyer, Corp. Dicksen, and Corp. Bordeau. Moreover, because LaPine is an indigent prisoner, "the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court." Fed. R. Civ. P. 4(c)(3).

The Marshal, however, cannot effectuate service without a proper address for the defendants, and LaPine has not provided the Court with an address for Wayne County, Dr. Huq, Dr. Myles, Dr. Patsalis, RN Duram, RN Long, RN Graham, D. Jones, Dept. Degasriapo, Corp. Dyer, Corp. Dicksen, and Corp. Bordeau. The Court is not obligated to actively seek the defendants' addresses so that service can be effectuated. *Fitts v. Sicker*, 232 F. App'x 436, 443-44 (6th Cir. 2007).

LaPine will be required to provide the Court with an address for each of these defendants.

### III.

Darrin LaPine has shown that he meets an exception to the three strikes rule and may proceed without the prepayment of fees. Funds must be transferred from his prison account, however, to cover the filing fee in this case. He failed to state a plausible claim for relief against the Wayne County Prosecutor's Office, Derek Emme, Michael Mileski, Michael Nelson, and the City of Detroit. And only certain claims brought under 42 U.S.C. § 1983 are viable.

Accordingly, it is **ORDERED** the plaintiff's petition to proceed without prepayment of fees and costs (ECF No. 2) is **GRANTED**.

It is further **ORDERED** that the Michigan Department of Corrections must assess and withdraw or set aside an initial partial filing fee from LaPine's trust fund account, forward this amount to the Clerk of this Court within thirty days of the date of this order, and in subsequent months, or from time to time, forward payments consisting of twenty percent of the preceding

month's income credited to LaPine's prison account until LaPine has paid the entire filing fee. The Court will notify the Department of Corrections when LaPine has paid the entire filing fee of $350.00.

It is further **ORDERED** that the Wayne County Prosecutor's Office, Derek Emme, Michael Mileski, Michael Nelson, and the City of Detroit are **DISMISSED** from this action under 28 U.S.C. §§ 1915 (e)(2)(B) and 1915A(b).

It is further **ORDERED** that LaPine's claims under 42 U.S.C. §§1981, 1985, and 1986 are **DISMISSED**.

It is further **ORDERED** that the plaintiff **MUST PROVIDE** the Court with the addresses for Wayne County, Dr. Huq, Dr. Myles, Dr. Patsalis, RN Duram, RN Long, RN Graham, D. Jones, Dept. Degasriapo, Corp. Dyer, Corp. Dicksen, and Corp. Bordeau **on or before January 27, 2020**. Failure to do so may result in the dismissal of the complaint.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date: December 26, 2019

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on December 26, 2019.

s/Susan K. Pinkowski
SUSAN K. PINKOWSKI