UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRIN LaPINE,

        Plaintiff,

v.

CITY OF DETROIT, COUNTY OF WAYNE,
WAYNE COUNTY PROSECUTOR'S OFFICE,
DR. HUQ, DR. MYLES, DR. PATSALIS,
RN DURAM, RN LONG, RN GRAHAM,
DEPT. D. JONES, DEPT. DEGASRIAPO,
CORP. DYER, CORP. DICKSEN, CORP. BORDEAU,
DEREK EMME, and JANE and JOHN DOES,

        Defendants.
_____/

Case Number 19-13165
Honorable David M. Lawson
Magistrate Judge Curtis Ivy, Jr.

### OPINION AND ORDER ADOPTING IN PART AND REJECTING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, SUSTAINING IN PART AND OVERRULING IN PART DEFENDANTS' OBJECTIONS, GRANTING IN PART AND DENYING IN PART MOTIONS TO SEVER CLAIMS AND REVOKE PAUPER STATUS, AND DISMISSING IN PART AMENDED COMPLAINT WITHOUT PREJUDICE

Plaintiff Darrin LaPine filed a complaint *pro se*, later amended, alleging that the various defendants violated his constitutional rights in three separate and discrete incidents while he was a prisoner at the Wayne County, Michigan jail. The case was referred to Magistrate Judge Curtis Ivy, Jr., to conduct all pretrial proceedings. Two sets of defendants filed motions to sever the claims alleging misjoinder, and they also ask the Court to revoke the plaintiff's pauper status. Judge Ivy issued a report recommending that the Court sever and dismiss one of the three claims and allow the case to proceed without requiring the plaintiff to prepay the fees. The defendants and the plaintiff filed timely objections to the report and recommendation, and the motions are before the Court for fresh review.

I.

A. The Claims

Plaintiff Darrin LaPine presently is a state prisoner at the Macomb Correctional Facility in Lenox Township, Michigan. In October 2019, he filed a *pro se* civil rights complaint and an application to proceed without prepaying the fees or costs for this case. His amended complaint raises a number of claims arising out of three different events in three different years: (1) claims related to his wrongful criminal prosecution for an assault that allegedly occurred in 2015; (2) claims related to a fall he suffered in 2017 while he was a detainee at the Wayne County Jail; and (3) claims that he was refused neuropathy surgery and medication while incarcerated at the Wayne County Jail in 2019. LaPine asserts the claims against Wayne County and the Wayne County Prosecutor's Office (the Wayne County defendants); health services provider Wellpath and its nurses Duram, Long, and Graham (the Wellpath defendants); the City of Detroit; and various other individuals whom LaPine alleges were involved in the three events that gave rise to his claims.

1. Wrongful Criminal Prosecution, 2015-19

LaPine alleges that on May 24, 2015, while he was on parole at the Detroit Reentry Center, a fellow inmate named Michael Mileski accused him of biting Mileski's cheek and attempting to scratch Mileski's face. Later, Mileski changed his accusation and maintained that LaPine had inserted his fingers in Mileski's eyes and tried to gouge them out. Defendant Michael Nelson, a corrections officer, filed a critical incident report about the alleged assault, but LaPine was not provided with any discovery materials, and the institutional hearing investigator refused to investigate the matter. LaPine says that he was found guilty of the disciplinary charge even though no one questioned the witnesses or provided any physical evidence to support the charge. The disciplinary case was then referred to the Michigan State Police for possible criminal charges.

LaPine alleges that he was arrested without probable cause and has been falsely imprisoned since then. Am. Compl., ¶ 1, ECF No. 11, PageID.85-89.

Defendant Derek Emme of the Michigan State Police requested a warrant, and around September 14, 2016, the Wayne County Prosecutor's Office authorized a warrant. LaPine was charged with one count of assault with intent to maim or disfigure Mileski. On October 18, 2016, a video arraignment was conducted, and at a preliminary examination on November 30, 2016, the presiding judge concluded that there was probable cause to charge LaPine with a felony. LaPine, however, contends that there was no probable cause to charge him, his arrest was illegal, and his imprisonment is illegal. Am. Compl., ¶ 2, ECF No. 11, PageID.89-91.

On February 27, 2017, LaPine's criminal case on the assault charge was dismissed due to pre-arrest delay. The prosecutor, however, appealed the trial judge's decision, and on November 15, 2018, the Michigan Court of Appeals remanded the case because no intentional delay or prejudice had been shown. The Michigan Supreme Court declined to grant leave to appeal. LaPine, however, maintains that the Wayne County Prosecutor's Office misrepresented to the state circuit court that there were no videos, no intentional delay, and no known witnesses. He also alleges in conclusory fashion that the criminal case was the result of a conspiracy and that it was a retaliatory act, which violated his right to due process. Am. Compl., ¶ 7, ECF No. 11, PageID.95-97.

In 2019, LaPine's parole was suspended, reinstated, and suspended again, apparently as a result of the criminal case against him. Additionally, the state trial court refused to hear LaPine's motions to dismiss the criminal case even though the motions alleged that the defendants had engaged in corrupt conduct. Am. Compl., ¶ 8, ECF No. 11, PageID.97.

2. Injuries from a Fall and Denial of Medical Care, 2017

LaPine alleges that, on February 21, 2017 or thereabout, while he was being held in the Wayne County Jail, he was handcuffed to another prisoner and told to climb the stairs instead of taking the elevator in the tunnel that leads between the jail and the county courts. LaPine says that defendant Dyer, a deputy Wayne County sheriff, stood by and allowed this to happen, despite knowing that LaPine could not climb stairs. The other inmate lost control of his legal materials, and both he and LaPine fell to the tunnel floor below. LaPine suffered cuts, abrasions, lumps, bruises, and pain from the fall, but he did not receive any treatment for his injuries. He contends that he complained to defendant D. Jones, another deputy sheriff, who did nothing, and defendant deputy Dicksen threatened to beat him if he complained about being injured and needing medical care. LaPine alleges that he would not have fallen or been injured if it had not been for the order to climb the stairs. Am. Compl., ¶ 5, ECF No. 11, PageID.91-94.

LaPine alleges that on February 22, 2017, defendants Deputy Degasriapo and Jones took LaPine to the medical unit in a wheelchair, but the deputies and medical staff from Corrections Healthcare laughed at him, and he was not treated for his injuries. Dr. Huq made him walk, but he fell again and re-injured himself. He was finally given a stroller with a seat, and defendant Corp. Bordeau escorted him back to his cell, where he had to give up his stroller. Am. Compl., ¶ 5, ECF No. 11, PageID.94-95.

On February 24, 2017, defendant Degasriapo informed LaPine that he would have to walk about half a mile to the medical unit to get medical treatment and x-rays. LaPine says that he never received any medical treatment because he could not walk to the medical unit. Am. Compl., ¶ 6, ECF No. 11, PageID.95.

### 3. Denial of Medical Care, 2019

Finally, LaPine alleges that he was scheduled for spinal surgery on October 2, 2019 to treat a nerve root impingement, spinal stenosis, degenerative disk disease, acute sciatica, herniated and bulging disks, arthritis, and neuropathy. Am. Compl., ECF No. 11, PageID.84. He says he was assured by Wellpath defendants Duram, Graham, and Long that the scheduled surgery had been coordinated with Henry Ford Hospital. Dr. Patsalis and Dr. Myles also assured LaPine that he was having surgery on October 2, 2019. According to LaPine, the surgery was not performed, and there is a reasonable likelihood that he will be paralyzed as a result. LaPine also alleges that Dr. Patsalis repeatedly refused to give him the medication he needed for his neuropathy, causing him severe pain. *Id.* at PageID.97-100.

## B. Procedural History

### 1. IFP Application

On October 28, 2019, LaPine filed an application to proceed in district court without prepaying fees or costs. The Court screened the case for merit under 28 U.S.C. § 1915(e)(2)(B) and found that LaPine had previously filed three or more civil cases that were dismissed as frivolous or for failure to state a claim. ECF. No. 7. However, the Court also found that LaPine satisfied an exception to the Prison Litigation Reform Act's (PLRA) "three strikes" rule because he was in imminent danger of a life-threatening injury to due to the canceled spinal surgery, which remains postponed. *Ibid.* The Court thus permitted LaPine to proceed without prepaying the fees or costs, required that he eventually pay the full filing fee by making monthly payments from his prison trust fund account. The Court also dismissed the claims LaPine had brought under 42 U.S.C. §§ 1981, 1985 or 1986 because the facts LaPine alleged in his complaint did not support recovery under any legal theory contemplated by those statutes, but only under 42 U.S.C. § 1983.

*Ibid.* Finally, the Court dismissed defendants the Wayne County Prosecutor's Office, Derek Emme, Michael Mileski, Michael Nelson, and the City of Detroit from the case. *Ibid.*

On January 28, 2020, LaPine filed a motion to amend the Court's order under Federal Rule of Civil Procedure 59(e), arguing that the Court misconstrued the nature of his allegations in dismissing his claims. He also filed an amended complaint by right. On February 24, 2020, Magistrate Judge Grand filed a report recommending that LaPine's motion be granted and his case against some of the dismissed defendants be reinstated. LaPine did not object substantively to any of the magistrate judge's conclusions, and the Court adopted the magistrate judge's report and recommendation and granted LaPine's motion to amend or alter the judgment. ECF. No. 16.

On March 1, 2021, the Wayne County defendants moved to revoke LaPine's pauper status and to sever his section 1983 claims into three separate actions. The Wellpath defendants filed a similar motion on April 22, 2021. LaPine filed a single response brief in opposition.

2. Report and Recommendation

On October 12, 2021, Magistrate Judge Curtis Ivy, Jr. issued a report recommending that the Court grant in part the defendants' motions to sever and revoke IFP status, sever LaPine's claims into two, dismiss the wrongful prosecution claims without prejudice, and permit the remaining claims to go forward without prepayment of fees.

Judge Ivy grouped LaPine's claims into the three sets discussed above. He determined that the claims were misjoined because the first set arose out of different transactions and occurrences than the second and third sets of claims, which the magistrate described as the "condition of confinement" claims. However, the magistrate judge concluded that the two confinement conditions claims were joined properly because they are all against Wellpath and a party may raise as many claims as it has against another party under Federal Rule of Civil Procedure 18. The

magistrate thus recommended that the claims related to LaPine's 2015 assault discipline and prosecution be dismissed without prejudice, and defendants Derek Emme and the Wayne County Prosecutor's Office be dismissed from the case.

Judge Ivy also recommended rejecting the challenge to LaPine's pauper status. He acknowledged that LaPine's litigation history includes three or more previous civil cases dismissed as frivolous or for failure to state a claim. But he also pointed out that the Court already ruled that LaPine's allegation about his cancelled surgery met the imminent danger exception to the three strikes rule, and he found that the defendants have not offered compelling grounds to revisit that ruling.

II.

The plaintiff and both groups of defendants objected to the recommendation. When a party files timely objections to a report and recommendation, the court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). This fresh review requires the court to re-examine all of the relevant evidence previously reviewed by the magistrate judge in order to determine whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1).

This review is not plenary, however. "The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately," *Walters*, 638 F.2d at 950, enabling the court "to focus attention on those issues — factual and legal — that are at the heart of the parties' dispute," *Thomas v. Arn*, 474 U.S. 140, 147 (1985). As a result, "[o]nly those specific objections to the magistrate's report made to the district

court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

A.

The Wellpath defendants and the Wayne County defendants each object to the magistrate judge's refusal to recommend revoking LaPine's pauper status. They argue that LaPine's allegations of imminent danger do not relate to all of his claims, and they contend that because LaPine is now in state custody and no longer under their care or control, the imminent danger exception to the "three strikes" rule no longer applies. However, that exception "is essentially a pleading requirement," as a *pro se* plaintiff, LaPine is "entitled to have his complaint liberally construed," and "he need not affirmatively prove those allegations at this stage of litigation." *Vandiver v. Prison Health Servs., Inc.*, 727 F.3d 580, 585 (6th Cir. 2013) (tidied up). Moreover, the assessment of whether an imminent danger exists is made "at the time the complaint is filed." *Ibid.* The Court already has determined that the plaintiff has alleged sufficient facts to qualify for the imminent danger assessment. The defendants have not furnished convincing reasons to revisit that determination, and they have cited no authority to support the idea that subsequent developments can upset an initial finding that the exception applies.

These objections will be overruled.

B.

The defendants also object to the magistrate judge's recommendation to allow two of the three sets of claims to remain in the case. They believe that Federal Rule of Civil Procedure 18, which allow a plaintiff to join "as many claims it has against an opposite party," Fed. R. Civ. P.

18(a), does not apply where, as here, multiple unrelated claims are asserted against different defendants. Instead, they argue, Rule 20 takes precedence over Rule 18, so that each claim against each additional defendant must be transactionally related to the claim against the first defendant and involve a common question of law or fact. And although the two sets of claims both are characterized as conditions of confinement claims, they argue they are unrelated because they arose from separate incidents that occurred years apart. Moreover, LaPine's claims arising from his 2017 fall and subsequent inability to access medical care have nothing to do with the Wellpath defendants.

For his part, LaPine argues that none of his claims should be severed because they all arise out of the same transaction of his being brought to the Wayne County Jail and charged as part of a retaliatory conspiracy, and that judicial economy would best be served by trying them together. However, he did not object to the magistrate judge's recommendation.

The defendants are correct that Rule 20 is the governing rule here, because the plaintiff's amended complaint includes claims against multiple parties. Rule 18's liberal claims joinder provision does not come into play until after the Court applies Rule 20 to determine whether the parties are joined properly. *Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009) (quoting 7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001)) ("Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all."); *see also Ross v. Meagan,* 638 F.2d 646, 650 n.5 (3d Cir.1981), *overruled on other grounds by Neitzke v. Williams,* 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

Rule 20(a) allows individuals to be joined "in one action as defendants if":

(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Whether "a particular factual situation constitutes a single transaction or occurrence" is a case-specific inquiry. *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) (citing 7 C. Wright Federal Practice and Procedure § 1653 at 270 (1972)). Although "[n]o hard and fast rules have been established under the rule . . . construction of the terms 'transaction or occurrence' as used in the context of Rule 13(a) counterclaims offers some guide to the application of this test." *Ibid.* The Supreme Court explained that, in the context of Rule 13, "'transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Moore v. New York Cotton Exch.*, 270 U.S. 593, 610 (1926). Drawing on the Supreme Court's guidance, the Eighth Circuit held that "Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding." *Mosley*, 497 F.2d at 1333; *see also Crutcher v. Com. of Ky.*, 1992 WL 98020, at *3-4 (6th Cir. 1992) (citing and applying the *Mosley* standard). "Unrelated claims against different defendants belong in different suits," however, not only to prevent the "morass" of multi-claim, multi-defendant litigation, "but also to ensure that prisoners pay the required filing fees." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

Courts in this district have considered the following factors in determining whether claims arise from the same transaction or occurrence: "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the

same supervisors were involved, and whether the defendants were at different geographical locations." *Proctor*, 661 F. Supp. 2d at 778 (E.D. Mich. 2009) (quoting *Nali v. Michigan Dep't of Corrections*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

In determining whether to sever claims, courts likewise consider a number of factors, including:

> (1) whether the claims arise out of the same transaction or occurrence;
> (2) whether the claims present some common questions of law or fact;
> (3) whether settlement of the claims or judicial economy would be facilitated;
> (4) whether prejudice would be avoided if severance were granted; and
> (5) whether different witnesses and documentary proof are required for separate claims.

*Parchman v. SLM Corp.*, 896 F.3d 728, 733 (6th Cir. 2018) (citing *Productive MD, LLC v. Aetna Health, Inc.*, 969 F. Supp. 2d 901, 940 (M.D. Tenn. 2013)). Under Federal Rule of Civil Procedure 21, it is within the Court's discretion to sever any claim against a party upon a finding of misjoinder. *Id.* at 733-34.

LaPine's 2017 and 2019 claims do not arise out of the same transaction or occurrence. They occurred two-and-a-half years apart. They involve unrelated acts: although LaPine alleges that he was denied medical care in both 2017 and 2019, he sought entirely different care in each instance, and from different defendants, whom he alleges deprived him of his rights in different ways. LaPine's 2017 claims involve allegations that defendant correctional officers Dyer, Dicksen, Degasriapo, Jones, and Bordeau were indifferent to his fall down the stairs, denied him treatment for his fall, and aggravated his injuries by making him walk and fall again. Am. Compl., ¶¶ 5-6, ECF No. 11, PageID.91-95. In contrast, LaPine's 2019 claims involve allegations that Wellpath defendant nurses Duram, Graham, and Long, as well as Drs. Patsalis and Myles, were involved in denying him necessary surgery and medication to treat his neuropathy. Am. Compl., ¶ 9, ECF No. 11, PageID.97-100. The two incidents are not transactionally related and do not

involve any of the same individual defendants.  Nor is it clear that Wellpath even was involved in the 2017 events.  LaPine alleges that "nurses and Dr. Huq, from Corrections Healthcare" laughed at him when he requested treatment after his fall and told him to walk back to his cell despite being in severe pain.  Am. Compl., ¶ 5, ECF No. 11, PageID.94.  But neither Wellpath nor defendants Duram, Graham, or Long are mentioned in relation to LaPine's 2017 claims, which the Wellpath defendants argue have "nothing to do" with them.

It also is clear that LaPine's 2015 claims for wrongful prosecution have nothing to do with either condition-of-confinement claim and are not properly joined in this lawsuit.

LaPine has failed to demonstrate that his three sets of claims arise out of the same transaction or occurrence, or that there is a question of law or fact common to the defendants involved in his 2015, 2017 and 2019 claims.  The claims must be severed.

The defendants' objections to this part of the report and recommendation will be sustained.

Because the only claim that relates to the imminent danger exception to the "three strikes" rule is the 2019 claim for denial of medical care, the Court will permit that claim to proceed against the Wellpath defendants and sever and dismiss the other claims and the related defendants.

III.

The Court agrees with the magistrate judge's determination that the claims against the Wayne County defendants relating to the 2015 discipline and prosecution for assault are joined improperly and must be severed and dismissed, and that the plaintiff's pauper status will remain intact.  However, the 2017 and 2019 conditions-of-confinement claims are not properly joined in a single action and must be severed.

Accordingly, it is **ORDERED** that the defendants' objections to the report and recommendation (ECF No. 57, 58) are **SUSTAINED IN PART AND OVERRULED IN PART**,

and the report and recommendation (ECF No. 56) is **ADOPTED IN PART AND REJECTED IN PART**.

It is further **ORDERED** that the defendants' motions to sever claims and revoke the plaintiff's pauper status (ECF No. 32, 45) are **GRANTED IN PART AND DENIED IN PART**. The 2015 wrongful prosecution and discipline claim and the 2017 condition-of-confinement claim are severed from the 2019 condition-of-confinement claim. All claims except the 2019 condition-of-confinement claim are **DISMISSED WITHOUT PREJUDICE**. The motions are **DENIED** in all other respects.

It is further **ORDERED** that the amended complaint is **DISMISSED WITHOUT PREJUDICE** as to defendants Derek Emme, Dr. Huq, Dept. D. Jones, Dept. Degasriapo, Corp. Dyer, Corp. Dicksen, and Corp. Bordeau **only**.

It is further **ORDERED** that the previous reference order (ECF No. 18) remains in force.

                                                      s/David M. Lawson  
                                                      DAVID M. LAWSON  
                                                      United States District Judge

Date:   January 10, 2022