UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DARRIN LAPINE,<br>    Plaintiff,<br>v.<br><br>CITY OF DETROIT, RN DURAM, RN LONG, RN GRAHAM, WELLPATH, and JANE AND JOHN DOES,<br>    Defendants.<br>_____/ | Case No. 19-13165<br><br>David M. Lawson<br>United States District Judge<br><br>Curtis Ivy, Jr.<br>United States Magistrate Judge |

## REPORT AND RECOMMENDATION ON MOTION FOR SUMMARY JUDGMENT (ECF No. 116)

**I.    PROCEDURAL HISTORY**

Defendants Wellpath and Wellpath nurses Durham,[1] Long, and Graham from the Wayne County Jail ("WCJ") moved for summary judgment on Plaintiff's sole remaining Eighth Amendment deliberate indifference claim. (ECF No. 116). Plaintiff alleges that these Defendants exhibited deliberate indifference when they failed to send him out for scheduled spinal surgery on October 2, 2019. The motion is fully briefed and ready for report and recommendation.

---

[1] Plaintiff spelled this Defendant's name "Duram" in his complaint, but in briefing she spells it "Durham." The undersigned will use her spelling in this report and recommendation.

For the reasons discussed below, the undersigned **RECOMMENDS** that the motion for summary judgment be **GRANTED**.

**II.     ANALYSIS AND RECOMMENDATIONS**

    A.     <u>Factual Background</u>

As mentioned, the only claim that remains is Plaintiff's claim about deliberate indifference in 2019 while he was housed at the WCJ. The relevant facts from the amended complaint were summarized in a prior Order:

> LaPine alleges that he was scheduled for spinal surgery on October 2, 2019 to treat a nerve root impingement, spinal stenosis, degenerative disk disease, acute sciatica, herniated and bulging disks, arthritis, and neuropathy. He says he was assured by Wellpath defendants Duram, Graham, and Long that the scheduled surgery had been coordinated with Henry Ford Hospital. . . . According to LaPine, the surgery was not performed, and there is a reasonable likelihood that he will be paralyzed as a result.

(ECF No. 59, PageID.408) (internal citations omitted).

The facts that could appear in the record on summary judgment were limited in a recent Order sanctioning Plaintiff for failure to fully engage in discovery. The sanctions below were imposed:

> (1) Plaintiff may not rely on medical records from a medical provider other than those identified in interrogatories (Wayne County Jail, Michigan Department of Corrections, and the Sault Tribe Memorial hospital),

> (2) he may not use evidence from or call as a witness any lay or expert witness not previously identified (including information, testimony, statements, affidavits, etc., from such witness), and
>
> (3) he may not claim damages except for those he identified in interrogatories (pain, suffering, and mental anguish) (see ECF No. 104, PageID.660-61).

(ECF No. 113, PageID.736). Relevant for purposes of addressing the pending motion for summary judgment is that Plaintiff did not identify an expert witness who would testify in this medical deliberate indifference case. The facts that follow derive from Plaintiff's affidavit and his medical records, i.e., admissible evidence that a jury could rely on.

Plaintiff was temporarily moved from a Michigan Department of Corrections facility to WCJ on September 5, 2019, pending a hearing related to his parole. (ECF No. 116, PageID.761). He was housed in the infirmary. (ECF No. 116-1, PageID.791-921). Plaintiff says in his response brief that he was at WCJ as a pretrial detainee on a case for assault with intent to maim, which was dismissed, not for an issue related to his parole. (ECF No. 118, PageID.928). This fact dispute is immaterial.

Healthcare staff screened Plaintiff when he arrived at WCJ and recommended him for chronic care appointments. WCJ staff maintain they were unaware that Plaintiff was scheduled for surgery while he was at MDOC, and the surgery was to occur on October 2, 2019, with a pre-operative appointment

3

scheduled for September 10, 2019. They point to Plaintiff's medical records which have a date stamp indicating when records were received—September 20, 2019, ten days after the pre-op appointment was supposed to occur. (*See* ECF No. 116-2 (Each page of the medical records has a small stamp that reads "SEP 20 2019.")). Plaintiff insists that WCJ had access to his MDOC medical records the day of his transfer because a prisoner's medical records travel with the prisoner; he witnessed this "on each and every writ transfer." (ECF No. 118, PageID.938). He says he watched the transportation officer hand his medical records and medications to the sergeant at WCJ. (*Id.* at PageID.939). He also notes that the records are available electronically and could be viewed at WCJ. (*Id.* at PageID.938).

Medical personnel evaluated Plaintiff the day he arrived at the jail. His intake form noted spinal stenosis as an observed problem since June 19, 2019. Non-party nurse Meadows noted that Plaintiff admitted to having spinal stenosis. (ECF No. 116-1, PageID.790). Later that day, Plaintiff took his medications and made no complaints, according to another non-party nurse. (*Id.* at PageID.792). On September 10, 2019, the day Plaintiff was scheduled to attend a pre-op appointment, Plaintiff submitted a kite (letter) to healthcare stating that he had not received medications and things such as a special diet and a snack bag. He wrote that he was in severe pain from his spine and other issues. (*Id.* at PageID.797). He did not mention a pre-op appointment. His medications were dispensed that day

and given to the pharmacy; he received the medication the next day. (*Id.* at PageID.801-02). Plaintiff submitted two kites on September 13, 2019, asserting that he still had not gotten his Neurontin for nerve pain. (*Id.* at PageID.804-05). On September 14, 2019, Defendant Durham spoke with the jail medical provider and got orders for medication. (*Id.* at PageID.808).

Until September 20, 2019, Plaintiff's WCJ records continued largely the same—Plaintiff sometimes complained of pain or other issues and was given medication, but there was no mention of off-site appointments, and he was seen regularly, either during rounds or to be examined by a medical provider. (*Id.* at PageID.808-17). September 20, 2019, is when WCJ Defendants say that the jail received Plaintiff's MDOC records that included notations about the September 10, 2019, pre-op appointment and October 2, 2019, scheduled surgery. Despite missing the appointment and surgery, medical staff continued to see Plaintiff during rounds and examinations, providing medication (except in instances when Plaintiff refused medication) and answering complaints. (*Id.* at PageID.817-858).

Plaintiff's perspective is that WCJ medical staff knew from the first day that he had surgery scheduled for October 2, 2019, because he told them repeatedly about his surgery. In his affidavit, Plaintiff says that when he was seen by nurse Meadows on his first day at WCJ, he told her that he had upcoming surgery and discussed his surgery "in length and detail." (ECF No. 118, PageID.939).

5

Similarly, Plaintiff says he discussed his upcoming surgery to other medical providers, including former Defendant Dr. Miles. (*Id.* at 939-40, 942). In his interrogatory responses, Plaintiff asserted that Defendants Durham, Graham, and Long assured Plaintiff they were working with MDOC to schedule transportation for surgery. (ECF No. 90, PageID.594). He also states that any records from jail rounds reflecting that Plaintiff made no complaints are untrue. Rather, he "made numerous complaints" throughout his time at WCJ. (ECF No. 118, PageID.943). He contends that "[p]ermanent damages has resulted" from not having spinal surgery on October 2, 2019. (*Id.* at PageID.944).

    B.    <u>Governing Standards</u>

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486

(6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citation omitted). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

That Plaintiff is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of *pro se* pleadings does not require lenient

7

treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). And "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema*, *N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a *pro se* litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

C.   Discussion

    1.   Eighth Amendment Claim against Wellpath Employees

The first issue to address is whether Plaintiff should be considered a pretrial detainee, as he says, or a prisoner simply on a writ to WCJ. His status impacts the deliberate indifference evaluation. Neither party provided legal support for their positions. Since it is undisputed that Plaintiff was at WCJ on a writ from an MDOC facility, it is presumed that Plaintiff continued to serve the sentence for

8

which he was in custody with the MDOC. In other words, his time at WCJ on a writ from MDOC did not alter his custody status, it merely changed the location of his custody. *See Muz v. Michael*, 28 F.3d 795, 798 (8th Cir. 1994) ("[I]ssuance of [a] writ of habeas corpus *ad prosequendum* d[oes] not alter [the defendant's] custody status. It merely change[s] the location of his custody for the sentence he was already serving.") (quoting *Sinito v. Kindt* 954 F.2d 467, 469 (7th Cir. 1992)); *Brown v. Gonzales*, 2011 WL 826281, at *4 (E.D. Cal. Mar. 2, 2011) ("Plaintiff does not deny that while at Lerdo, he continued to serve his state prison sentence. Plaintiff remained under the authority of the CDCR with regard to the state sentence already imposed, and his status as a convicted prisoner cannot be disregarded simply because he was moved to Lerdo for prosecution of another crime."). Thus, the undersigned will treat the deliberate indifference claim as one raised by a prisoner under the Eighth Amendment.

The Eighth Amendment prohibits "cruel and unusual punishment" against individuals convicted of crimes. "The Eighth Amendment is violated when an official is deliberately indifferent to the serious medical needs of a prisoner in their care." *Jones v. Cnty. of Kent*, 601 F. Supp. 3d 221, 243 (W.D. Mich. Apr. 29, 2022) (citations omitted). Because the "Eighth Amendment prohibition against cruel and unusual punishments applies to the [S]tates through the Fourteenth Amendment, . . . prisoners may sue [S]tate prison authorities for Eighth

9

Amendment violations." *Rhinehart v. Scutt*, 894, F.3d 721, 735 n.12 (6th Cir. 2018) (citing *Robinson v. California*, 370 U.S. 660, 667 (1962)).

"A claim for the deprivation of adequate medical care has an objective and a subjective component." *Jones*, 601 F. Supp. 3d at 243 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). For "the objective component, the plaintiff must establish that the medical need at issue is sufficiently serious." *Id.* (citing *Farmer*, 511 U.S. at 834). A prisoner can establish that he has a serious medical need if "a doctor has diagnosed a condition as requiring treatment or [ ] the prisoner has an obvious problem that any layperson would agree necessitates care." *Phillips v. Tangilag*, 14 F.4th 524, 534 (6th Cir. 2021) (citation omitted). "Only if a prisoner proves this objective element must courts consider the second (subjective) part of the deliberate-indifference test." *Id.* at 535.

There are a few ways to satisfy the objective component. "[I]f doctors effectively provide no care for [a serious medical need]," then the objective element is satisfied. *Id.* at 534 (citation omitted). But "[m]ore frequently, doctors provide some care and prisoners challenge their treatment choices as inadequate. To establish the objective element in this common situation, prisoners must show more." *Id.* at 534–35 (citations omitted). That is, the care must be "so grossly incompetent or so grossly inadequate as to shock the conscience or be intolerable to fundamental fairness." *Id.* at 535 (internal quotation marks and quotation

omitted). "[T]o prove grossly inadequate care, . . . courts generally require [prisoners] to introduce medical evidence, typically in the form of expert testimony." *Id.* (citations omitted). And "mere malpractice does not violate the Eighth Amendment." *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Plaintiff here was provided medical care while at WCJ during the period relevant to the claims—nurses or other medical providers saw Plaintiff during regular rounds, he was examined by providers, and he was administered medication. The care he received was not all the care he requested. He states that he was in pain often because he was not given adequate pain medication and, of course, he did not go to the pre-op appointment, nor did he have spinal surgery that was scheduled by MDOC for October 2, 2019. Because Plaintiff was given some medical care for his ailments, to succeed on his claim of inadequate medical care, Plaintiff must prove the care he received was grossly inadequate, which requires expert testimony. *Phillips*, 14 F.4th at 536 ("[Plaintiff] needed to present expert medical evidence describing what a competent doctor would have done and why the chosen course was not just incompetent but grossly so.").

Plaintiff's failure to provide an expert report is fatal to his claim. Expert testimony is needed here because it is not clear that, even if the Defendants knew about the surgery but still did not ensure transportation to the appointment, providing pain medication and other amenities amounted to grossly incompetent

11

care, rather than negligent care or incompetent care. To begin, the jury would need an understanding of Plaintiff's spinal condition at the time he was housed at WCJ to understand the need to have surgery on October 2, 2019, rather than on a later date. Aside from Plaintiff's affidavit statements about pain and numbness in his body because of the spinal issues, there is no medical evidence about his condition. Next, there is no evidence about what a competent doctor would have done, or of the detrimental effect of not having surgery during October 2019. Plaintiffs raising these claims can no longer rely on serious medical needs alone to establish objective deliberate indifference in these cases. *Id.* Without such evidence, a reasonable jury could not find the care Plaintiff received to be grossly incompetent.

Plaintiff states, without medical evidence to support, that the failure to have surgery while in custody caused lasting issues—his symptoms increased and his pain is constant, among other issues.[2] (ECF No. 118, PageID.941). Defendants point out that Plaintiff still had not had surgery over a year later, which would undercut the assertion that the failure to ensure Plaintiff underwent surgery in October 2019 had a detrimental effect on his health. By April 29, 2021, the day

---

[2] In his response brief, Plaintiff asserted that a doctor from an unstated facility or medical office told Plaintiff that Plaintiff would be paralyzed without surgery. (ECF No. 118, PageID.931). Statements raised in a response brief are not evidence that can be considered on summary judgment. *See Smoot v. United Transp. Union*, 246 F.3d 633, 649 (6th Cir. 2001) ("[I]t is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." (quoting *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994)).

after Plaintiff was released from MDOC custody, he still had not undergone spinal surgery. (ECF No. 116-3, PageID.911). Before that date, he was again housed in an MDOC facility, but MDOC personnel did not schedule and transport Plaintiff for surgery. As of December 2021, Plaintiff had carpal tunnel surgery scheduled for January 2022, and his medical provider stated that Plaintiff would see another doctor for his back pain. (*Id.* at PageID.919-20). He still was not scheduled for surgery. This medical evidence appears to show that carpal tunnel syndrome was more of an emergent condition than Plaintiff's spinal stenosis since spinal surgery went unscheduled. Given this evidence, it is even less likely that a reasonable jury would find that the care provided at WCJ to be so grossly incompetent as to violate the Eighth Amendment. Thus, Plaintiff does not satisfy the objective component.

Plaintiff's claims also fail on the subjective component. This component requires the inmate to show that a prison official "[knew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. To succeed, Plaintiff must show that the individual defendants (1) were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists"; (2) actually drew the inference; and (3) consciously disregarded the risk. *Id.* at 837, 839; *Phillips*, 14 F.4th at 535.

In response to interrogatories, Plaintiff made the same claim against all three nurse Defendants (Plaintiff did not establish actions or liability for each Defendant

13

separately)—they assured Plaintiff that they were working with MDOC to secure transportation to his surgery. (ECF No. 90, PageID.594). Despite their assurances, Plaintiff was not taken to his surgical appointment. Defendants argue that, accepting Plaintiff's interrogatory responses, he has not established subjective deliberate indifference. Rather, it shows that they were aware of his needs and were working to ensure he underwent surgery. (ECF No. 116, PageID.775). They note that Plaintiff produced no evidence showing that either of the Defendants had control over scheduling or transportation for off-site appointments, and consciously chose to cancel or delay surgery. (*Id.*).

The undersigned agrees with Defendants. There is no *evidence* that Durham, Graham, or Long consciously disregarded a risk of harm to Plaintiff and delayed or canceled his surgery. As noted, statements made in a response brief are not evidence to be considered on summary judgment. The evidence shows that Plaintiff was given regular care or visits with WCJ healthcare staff, and that Durham, Graham, and Long were working to ensure Plaintiff was transported to surgery. That he was not ultimately taken to his appointment in October 2019, according to the evidence, did not stem from subjective deliberate indifference on the part of the Defendants. Thus, Plaintiff's claim fails on the subjective component as well. The nurse Defendants' motion for summary judgment should be granted.

2. Claim Against Wellpath

In the Sixth Circuit, "a private entity which contracts with the [S]tate to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting 'under color of state law.'" *Keene v. Wellpath Corp.*, 2021 WL 1294782, at *1 (W.D. Ky. Apr. 7, 2021) (quotation omitted). "Thus, private defendants like Wellpath that have contracted to provide medical services to inmates . . . are afforded the same analysis under § 1983 claims as municipalities." *Id.* "A plaintiff raising a municipal liability claim under § 1983 must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). More specifically, a plaintiff must establish that the municipality is responsible by tying the constitutional violation to a policy, custom, or practice of the municipality. *See Monell*, 436 U.S. at 694; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986); *Thomas v. City of Chattanooga,* 398 F.3d 426, 429 (6th Cir. 2005).

In his response brief, Plaintiff stated, again without evidentiary support, that Wellpath has a policy of not providing certain medications to those who have had it prescribed in the past. (ECF No. 118, PageID.936). Setting aside the fact that a medication claim is not part of this case, this assertion is not evidence on which a jury could rely to conclude that Wellpath had an unconstitutional policy. Plaintiff

15

needed to marshal evidence of the policy or custom and connect that policy or custom to Wellpath, which he did not do. For this reason, this *Monell* claim should be dismissed.

Plaintiff also asserted in his response that all Defendants took part in the failure to provide medical treatment "via inadequate training, because had they received adequate training they would have known what to do and Plaintiff would have had his surgery and meds." (*Id.*). To succeed on a municipal failure-to-train claim, "[a] plaintiff must establish that the municipality, through its policymakers, failed to train or supervise employees despite 1) having actual or constructive knowledge of a pattern of similar constitutional violations by untrained employees . . . or 2) the fact that the constitutional violation alleged was a patently obvious and 'highly predictable consequence' of inadequate training." *Essex v. County of Livingston*, 518 F. App'x 351, 355–56 (6th Cir. 2013) (internal citation omitted); *see also Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 995 (6th Cir. 2017).

Again, Plaintiff marshalled no evidence about Wellpath's training program. For instance, there is no evidence that other inmates were denied necessary medication or surgery to establish a pervasive problem in Wellpath's training program.

Because of the lack of evidence in support of municipal liability, Wellpath's motion for summary judgment should be granted.

## III. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the Defendants' motion for summary judgment (ECF No. 116) be **GRANTED**.

The parties here may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  June 7, 2024                                     s/Curtis Ivy, Jr.
                                                        Curtis Ivy, Jr.
                                                        United States Magistrate Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on June 7, 2024.

                                                        s/Sara Krause
                                                        Case Manager
                                                        (810) 341-7850